No. 24-20451


IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT


UNITED STATES OF AMERICA,
Plaintiff-Appellee,


v.


JAMES BALDEMORO,
Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Texas

_____

**BRIEF FOR APPELLANT**

_____


PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

EVAN G. HOWZE
Assistant Federal Public Defender
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002
(713) 718-4600

## CERTIFICATE OF INTERESTED PERSONS
United States v. James Baldemoro,
No. 24-20451

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. District Judge: Hon. Andrew S. Hanen

2. Retired District Judge: Hon. Melinda Harmon

3. Magistrate Judge: Hon. Yvonne Y. Ho

4. Appellant: James Baldemoro

5. Appellant's Counsel: Federal Public Defender Philip G. Gallagher; and Assistant Federal Public Defenders Marina-Thais Douenat (former), Rachael Melby, Natalie J. Awad, and Evan G. Howze

6. Appellee: United States of America

7. Appellee's Counsel: United States Attorney Nicolas J. Ganjei; and Assistant United States Attorneys Sherri L. Zack, Mark McIntyre, and Carrie Wirsing

s/ *Evan G. Howze*
EVAN G. HOWZE

## REQUEST FOR ORAL ARGUMENT

Mr. Baldemoro requests oral argument. This appeal presents open and novel questions regarding the lawfulness and constitutionality of the imposition of a term of reimprisonment upon the revocation of supervised release, as contemplated in 18 U.S.C. § 3583(e)(3), against a defendant who already received and served the maximum prison sentence that his statute of conviction authorized for his offense. Here, the underlying statute allowed Mr. Baldemoro to be "imprisoned for not more than 10 years." 18 U.S.C. § 2252A(b)(2). And the district court imposed the maximum.

The primary question for the Court is whether applying Section 3583(e)(3) to revoke Mr. Baldemoro's supervised release and reimprison him for six more months, and thereby increase the total custodial term "imposed for his initial offense," *Johnson v. United States*, 529 U.S. 694, 708 (2000), to *more* than 10 years, amounted to a sentence in excess of the statutory maximum. Alternatively, the Court must decide whether Section 3583(e)(3)'s application to Mr. Baldemoro violated the Fifth and Sixth Amendments because, in the rare case of a revocation sentence that stretches the defendant's time in prison beyond the upper limit set in his statute of conviction, such a sentence is best understood either as new punishment for the violation conduct, or as enhancing the underlying statutory maximum on the basis of judicial fact-finding. Oral discussion of these difficult questions of constitutional and statutory interpretation would aid the Court's decisional process.

iii

# TABLE OF CONTENTS

                                                                                          **Page**

Table of Citations ...................................................................................................v

Statement of Jurisdiction..........................................................................................1

Statement of the Issue ..............................................................................................2

Statement of the Case...............................................................................................3

Summary of the Argument .......................................................................................7

Argument...................................................................................................................

      The judgment of revocation and sentence should be vacated, either as
      exceeding the statutory maximum penalty for the original offense, or as
      new or enhanced punishment imposed in the absence of Fifth and Sixth
      Amendment procedural safeguards ................................................................8

    A.  Review is de novo .....................................................................................8

    B.  The revocation sentence is unlawful because Mr. Baldemoro has
        already received, and served, the maximum prison term that his
        statute of conviction authorizes for his offense .......................................8

    C.  Alternatively, Section 3583(e)(3)'s application to Mr. Baldemoro
        violated the Fifth and Sixth Amendments, either by effectively
        crossing over into punishment for his new violation conduct, or
        by enhancing the statutorily prescribed maximum prison term for
        his initial offense on the basis of judicial factfinding ............................25

    D.  The government cannot establish that any error is harmless .................28

Conclusion .............................................................................................................32

Certificate of Service .............................................................................................33

Certificate of Compliance ......................................................................................33

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Alleyne v. United States*, 570 U.S. 99 (2013) .......................................... 10

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ......................................5, 10, 16, 17,

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) ............................................... 26

*Johnson v. United States*, 529 U.S. 694 (2000) ............................................ *passim*

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ............................................26

*United States v. Butler*, 895 F.2d 1016
 (5th Cir. 1989) ........................................................................... 15

*United States v. Caldera–Herrera*, 930 F.2d 409
 (5th Cir. 1991) ........................................................................... 13

*United States v. Caso*, 723 F.3d 215
 (D.C. Cir. 2013) .......................................................................... 12

*United States v. Flores*, No. 23-50128, — F.4th —, 2025 WL 682273
 (5th Cir. Mar. 4, 2025) .................................................................. 15

*United States v. Haymond*, 588 U.S. 634 (2019) ............................................*passim*

*United States v. Jackson*, 559 F.3d 368
 (5th Cir. 2009) ........................................................................... 21

*United States v. Lipscomb*, 66 F.4th 604
 (5th Cir. 2023) ....................................................................... 9-11, 17

*United States v. Oswalt*, 771 F.3d 849
 (5th Cir. 2014) ............................................................................. 8

*United States v. Sierra-Hernandez*, 192 F.3d 501
 (5th Cir. 1999) ............................................................................. 8

v

## TABLE OF CITATIONS – (cont'd)

**Page(s)**

### Statutes, Rules, and Guidelines

18 U.S.C. § 2252A(a)(5) ................................................................. 3, 11-12, 19, 22

18 U.S.C. § 2252A(b)(2) ...................................................................... *passim*

18 U.S.C. § 3559(a)(3) ............................................................................... 12

18 U.S.C. § 3559(b) ............................................................................... 18-19

18 U.S.C. § 3583(e)(3) ..................................................................... *passim*

18 U.S.C. § 3583(h) ..................................................................................... 21

18 U.S.C. § 3583(k) ................................................................. 10, 17, 21, 25

18 U.S.C. § 3742 .......................................................................................... 1

28 U.S.C. § 1291 .......................................................................................... 1

Fed. R. App. P. 4(b)(2) ............................................................................... 1

5th Cir. R. 28.2.1 ....................................................................................... ii

USSG § 7B1.1(a)(3) .................................................................................... 5

USSG § 7B1.1(b) ........................................................................................ 5

USSG § 7B1.4 ............................................................................................. 5

### Miscellaneous

Antonin Scalia & Bryan A. Garner,
 *Reading Law: The Interpretation of Legal Texts*
 (1st ed. 2012)............................................................................................ 13

# TABLE OF CITATIONS – (cont'd)

**Page(s)**

## Miscellaneous – (cont'd)

Fiona Doherty, *Indeterminate Sentencing Returns:*
  *The Invention of Supervised Release*,
  88 N.Y.U. L. Rev. 958 (2013) ............................................................... 21

Tr. of Oral Argument,
  *United States v. Haymond*, No. 17-1672 ............................................... 28

U.S. Sentencing Comm'n,
  *Federal Offenders Sentenced to Supervised Release* (2010) ............................... 21

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Texas entered judgment revoking Mr. Baldemoro's term of supervised release and imposing a revocation sentence on October 21, 2024. Mr. Baldemoro timely filed notice of appeal on October 8, 2024. *See* Fed. R. App. P. 4(b)(2). This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the judgment of revocation and sentence should be vacated, either as exceeding the statutory maximum penalty for the original offense, or as new or enhanced punishment imposed in the absence of Fifth and Sixth Amendment procedural safeguards.

## STATEMENT OF THE CASE

In February of 2014, a federal grand jury returned a four-count indictment charging James Baldemoro with three counts of distributing material than contained child pornography (counts 1–3), in violation of 18 U.S.C. § 2252A(a)(2)(B), (b)(1), and one count of possessing material that contained images of child pornography (count 4), in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). ROA.16-19. Under the penalty provision applicable to the first three counts, Mr. Baldemoro faced a minimum prison term of five years and maximum of 20 years. 18 U.S.C. § 2252A(b)(1). The provision implicated in count 4, in contrast, carried no minimum term, and provided that he could "imprisoned not more than 10 years." *Id.* § 2252A(b)(2).

Mr. Baldemoro later agreed to plead guilty to count 4, the possession count, in exchange for the government's promises to move to dismiss the remaining counts and support credit for accepting responsibility at sentencing. ROA.70, 216. At sentencing, the advisory Guidelines range settled at 97–121 months (at the intersection of total offense level 30 and criminal history category I), adjusted to 120 months in light of the applicable 10-year maximum. ROA.71. Explaining that it "believe[d] that the statutory maximum sentence of 120 months' imprisonment [wa]s appropriate pursuant to the guidelines," ROA.233, the district court imposed the upper-limit term of 10 years, to be followed by 10 years of supervised release. ROA.71-72. The court also ordered an agreed amount of $5,000 restitution. ROA.74.

Mr. Baldemoro began his term of supervision upon his release in October of

2022. ROA.421. After an earlier agreement to modify the release conditions in light

of two alleged technical violations, ROA.144-49, the probation officer petitioned to

revoke Mr. Baldemoro's release, in April of 2024, alleging the same two technical

violations, plus two more, as set out in the following table:

| VIOLATION | BASIS |
|---|---|
| 1. special condition not to view or possess porno-graphic materials | on December 19, 2023, admitted to PO and sex offender therapist that he had viewed "sexually explicit material" while at "bookstores" in the greater Houston area, and had visited with his cousin and her two minor children "without approval," ROA.422 |
| 2. special condition to take polygraph tests | on March 28, 2024, missed second scheduled polygraph test, and gave notice that he would refuse to take any further such tests in the future, ROA.422 |
| 3. special condition to attend sex offender treatment program | on April 10, 2024, unsuccessfully discharged from sex offender treat-ment because he (a) missed two consecutive group sessions on April 2 and April 9, (b) was nonrespon-sive to efforts to contact him, and (c) refused to take further poly-graph exams, ROA.422 |
| 4. special condition to pay restitution as directed | stopped paying monthly restitution payments as of July 2023 (currently owes $1,169.10; last paid $924.72 on 2/22/24 through garnishment of income tax return, ROA.422 |

ROA.421-24. Because the violations were all technical, and in light of the original

criminal history category of I, the advisory Guidelines range settled at 3–9 months' reimprisonment. USSG §§ 7B1.1(a)(3), (b) & 7B1.4(a). The general revocation statute, however, purported to authorize reimprisonment for up to two years. 18 U.S.C. § 3583(e)(3).

Prior to the hearing, Mr. Baldemoro, though represented by appointed counsel, filed a pro se "Motion to Terminate Supervised Release Due to Constitutional Rights Conflicts." ROA.160-69. In that motion, Mr. Baldemoro asserted a number of remarkably cogent objections to the district court's constitutional and statutory authority to detain and institute revocation proceedings against him, each of which coalesced around the central theme that he had already served the maximum prison term the law authorized for his offense, and that reimprisoning him for any amount of time resulted in unlawful and unauthorized additional punishment. ROA.161-66. At a minimum, he argued, the prospect of reimprisoning him beyond the maximum term prescribed by his statute of conviction as a further sanction "for the initial offense," ROA.165 (quoting *Johnson v. United States*, 529 U.S. 694, 700 (2000)), on the basis of judicial factfinding violated the Fifth and Sixth Amendments. *See* ROA.161-66 (repeatedly invoking and relying on *United States v. Haymond*, 588 U.S. 634 (2019), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

At the subsequent revocation hearing, Mr. Baldemoro pleaded not true to each alleged violation in light of his desire to fully preserve his constitutional objections.

ROA.252-53. After hearing evidence, the district court concluded that all four violations were more likely than not true and revoked Mr. Baldemoro's supervised release. ROA.279. Speaking on his own behalf, Mr. Baldemoro re-urged and elaborated at length on the arguments pressed in his motion. ROA.273-79. The district court overruled the objections, noting, however, that Mr. Baldemoro "preserved [his] error," and that, "obviously, if it goes up and the Fifth Circuit tells me I'm wrong, I'll fix it." ROA.279. The court then sentenced Mr. Baldemoro to six months' reimprisonment, to be followed by an additional term of supervised release of eight years under the same conditions. ROA.279-80.

This timely appeal followed. ROA.170-71.

## SUMMARY OF THE ARGUMENT

The district court's revocation judgment and sentence should be vacated for any of three independent reasons.

First, because Mr. Baldemoro already received the maximum available prison sentence for his offense of conviction, the effect applying Section 3583(e)(3) to revoke his supervised release and reimprison him for six more months, thereby increasing the total custodial term "imposed for his initial offense," *Johnson v. United States*, 529 U.S. 694, 708 (2000), beyond the 10-year limitation provided 18 U.S.C. § 2252(b)(2), amounted to a sentence in excess of the statutory maximum.

Alternatively, Section 3583(e)(3)'s application to Mr. Baldemoro violated the Fifth and Sixth Amendments because, in the rare case of a revocation sentence that stretches the defendant's time in prison beyond the upper limit set in his statute of conviction, such a sentence is best understood either as new punishment for the violation conduct, or as enhancing the underlying statutory maximum on the basis of judicial factfinding. In either case, the government cannot establish that the constitutional error was harmless beyond reasonable doubt.

## ARGUMENT

**The judgment of revocation and sentence should be vacated, either as exceeding the statutory maximum penalty for the original offense, or as new or enhanced punishment imposed in the absence of Fifth and Sixth Amendment procedural safeguards.**

### A. Review is de novo.

As he did below, Mr. Baldemoro argues that the district court imposed punishment in excess of statutory limits, or, alternatively, violated the Fifth and Sixth Amendments, in revoking his supervised release and reimprisoning him after he had already received, and served, the maximum custodial term prescribed for his offense—10 years. This Court reviews a claim that a sentence unlawfully exceeds statutory parameters de novo. *United States v. Oswalt*, 771 F.3d 849, 850 (5th Cir. 2014). The same standard governs review of constitutional challenges. *United States v. Sierra-Hernandez*, 192 F.3d 501, 503 (5th Cir. 1999).

### B. The revocation sentence is unlawful because Mr. Baldemoro has already received, and served, the maximum prison term that his statute of conviction authorizes for his offense.

Reduced to essentials, Mr. Baldemoro's first-order claim is that a term of reimprisonment imposed upon the revocation of supervised release, under 18 U.S.C. § 3583(e)(3), is unlawful to the extent it stretches the total custodial sanction for the defendant's underlying offense beyond the maximum prison term prescribed by his statute of conviction. Accordingly, in the unique circumstance of a defendant who

already received and served the maximum prison sentence authorized for his crime, like Mr. Baldemoro, applying the general revocation statute to impose more prison time directly contradicts that specific limitation, and has the effect of producing a sentence in excess of the statutory maximum.

That result follows, first and foremost, from the Supreme Court's authoritative construction of the term of reimprisonment authorized under Section 3583(e)(3) "as part of the penalty for the [defendant's] initial offense." *Johnson v. United States*, 529 U.S. 694, 700 (2000); *see United States v. Lipscomb*, 66 F.4th 604, 611 (5th Cir. 2023) ("Precedent similarly views post-revocation penalties as part of the underlying sentence."). As this Court observed in *Lipscomb*, 66 F.4th at 611, *Johnson* "most clearly explain[s] the relationship between a revocation judgment and its underlying sentence." In *Lipscomb*'s words:

> *Johnson* rejected the theory that a revocation judgment 'imposes punishment for defendants' new offenses for violating the conditions of their supervised release.' The rationale was that such a theory generated 'serious constitutional questions.'
>
> To circumvent constitutional problems, *Johnson* held that 'postrevocation penalties relate to the original offense.' Accordingly, courts must view 'postrevocation sanctions as part of the penalty for the initial offense.'

*Ibid.* (quoting *Johnson*, 529 U.S. at 700, 701) (cleaned up; alteration reverted to original).

*Lipscomb* also accurately observed that the Supreme Court "recently reaffirmed *Johnson*'s reasoning" on this topic in *United States v. Haymond*, 588 U.S. 634 (2019). *Haymond* involved a separate subsection of the supervised-release statute, 18 U.S.C. § 3853(k). In relevant part, that provision mandated revocation and reimprisonment for a minimum term of five years, with an increased maximum of life, where any defendant subject to federal sex-offender registration was later found to have committed one of several enumerated crimes while on supervised release. *Haymond*, 588 U.S at 638-39 (plurality). A four-Justice plurality affirmed the court of appeals' conclusion that the statute violated the due-process and jury-trial rights of the Fifth and Sixth Amendment, under the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), by allowing "judicial factfinding [to] trigger[] a new punishment in the form of a prison term of at least five years and up to life." *Haymond*, 588 U.S. at 646 (plurality). In a narrower, and so, controlling, concurring opinion, Justice Breyer isolated three features of Section 3583(k) that, when taken together, convinced him that the effect of the provision "more closely resemble[d] the punishment of new criminal offenses, but without granting a defendant the rights, including the jury right, that attend a new criminal prosecution." *Id.* at 659 (Breyer, J., concurring in the judgment).

The precise issues that *Haymond* did, and did not, resolve are discussed in greater depth later in this brief. *See infra*, Section C. For now, it suffices to observe,

as *Lipscomb* did, that both the four-Justice plurality and Justice Breyer (i.e., five Justices) "agreed that post-revocation penalties are part of the underlying penalty." *Lipscomb*, 66 F.4th at 612. "Justice Breyer's concurrence noted that a revocation judgment 'is typically understood as "part of the penalty for the initial offense."'" *Ibid.* (quoting *Haymond*, 588 U.S. at 658 (Breyer, J., concurring in the judgment), in turn quoting *Johnson*, 529 U.S. at 700)). Or, as the plurality put it, "'when a defendant is penalized for violating the terms of his supervised release, what the court is really doing is adjusting the defendant's sentence for his original crime.'" *Ibid.* (quoting *Haymond*, 588 U.S. at 648 n.5 (plurality) (alteration reverted)); *cf. Johnson*, 529 U.S. at 714 (Kennedy, J., concurring in part) ("What is at issue in this case is the appropriate adjustment to make to th[e] sentence when the prisoner has violated the conditions of supervised release."). So, when the district court in this case applied Section 3583(e)(3) to reimprison Mr. Baldemoro for six more months, it was adjusting the custodial component of the sentence as a further sanction for the original offense.

And therein lies the problem. By its terms, Section 3583(e)(3) purported to allow the court to "revoke [Mr. Baldemoro's] term of supervised release, and require [him] to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release"—his violation of Section 2252A(a)(5)—with the caveat that he could "not be required to serve on

any such revocation . . . more than 2 years in prison [because] such offense is a class C or D felony."[1] 18 U.S.C. § 3583(e)(3). To be sure, in the vast majority of cases, that general authorization to revoke supervised release and adjust the prison sentence does not clash with the specific maximum term of imprisonment provided by his statute of conviction. That is because, as the *Haymond* plurality noted, "'courts rarely sentence defendants to the statutory maxima'"—"only about 1% of [them] receive the maximum." 588 U.S. at 655 (quoting *United States v. Caso*, 723 F.3d 215, 224-25 (D.C. Cir. 2013)). But this is the rare case in which the application of Section 3583(e)(3) contradicts the specific limitation on the amount of prison time authorized for the defendant's offense by his statute of conviction.

In no uncertain terms, Section 2252A(b)(2) made Mr. Baldemoro's violation of Section 2252A(a)(5) punishable by "not more than 10 years" in prison. And the district court avowedly imposed the "statutory maximum sentence of [10 years'] imprisonment." ROA.233. Yet Section 3583(e)(3), as applied to Mr. Baldemoro, had the effect of allowing his offense to be punished by *more* than 10 years in prison—ten and a half years, to be precise.

The result is a direct conflict between the specific maximum prison term Section 2252A(b)(2) prescribed for Mr. Baldemoro's offense, and the general authority

---

[1] Under the general sentencing-classification statute, Mr. Baldemoro's Section 2252A(a)(5) offense was a "Class C felony" because "the maximum term of imprisonment authorized is . . . "less than twenty-five years but ten or more years." 18 U.S.C. § 3559(a)(3).

Section 3583(e)(3) provides to further sanction an offense of that class (Class C) by a period of reimprisonment upon revocation of supervised release. In short, Section 3583(e)(3) authorized and indeed resulted in a total prison term—for the "initial offense," *Johnson*, 529 U.S. at 700—that Section 2252A(b)(2) on its face precludes.

Where two statutes truly conflict (as these do), the general/specific canon of construction holds that, as to matters within the zone of contradiction, the dictates of the specific provision control. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 28, at 183-88 (1st ed. 2012). Of course, under the harmonious-reading canon, statutes "should be interpreted in a way that renders them compatible, not contradictory," *id.* § 27, at 180; *see United States v. Caldera–Herrera*, 930 F.2d 409, 412 (5th Cir. 1991) (observing that, "[w]here possible, statutes must be read in harmony with one another so as to give meaning to each provision."), provided that the harmonizing construction is a plausible interpretation of the text. *See Reading Law* § 28, at 183 (noting that conflicting provisions implicate the general/specific (or the irreconcilability) canon "when  the attribution of no permissible meaning can eliminate the conflict").

Here, in a case presenting the unique circumstance of a revocation proceeding against a defendant sentenced at or near the underlying statutory maximum prison term, the general/specific canon offers a readily apparent resolution. To the extent that the general authority to revoke and reimprison under Section 3583(e)(3) allowed

the penalty for Mr. Baldemoro's initial offense to surpass 10 years (as it did), Section 2252A(b)(2)'s specific limitation on the authorized period of imprisonment for that offense to "no[] more than 10 years" should govern. This reading preserves Section 3583(e)(3)'s generally applicable revocation and reimprisonment authority in all of the approximately 99% of cases involving defendants sentenced below the upper statutory limit for their underlying offense, while requiring that authority to yield to the maximum prescribed by the specific statute of conviction in only the exceedingly rare case of a defendant who has already received and served that maximum term.

The question, then, is whether there is an available, and plausible, construction of Section 3583(e)(3) that would eliminate the conflict at issue here (in the rare cases in which it arises) without resort to the general/specific canon. The statute would not punish Mr. Baldemoro's offense by more prison time than Section 2252A(b)(2) allows, for instance, if it were read as authorizing a separate, new term of imprisonment, as opposed to an adjustment to the prison term already imposed. Nor would the statutes clash if Section 3583(e)(3) were interpreted as amending the maximum prison term Section 2252A(b)(2) authorizes for the underlying offense, such that Mr. Baldemoro would be left to rely (as he does in the alternative, later) on the fact that such a reading would walk headlong into the Fifth and Sixth Amendment problems inherent in allowing judge-found facts to enhance the permissible range of penalties.

14

The first option, whether or not plausible, is foreclosed by *Johnson*, as reaffirmed in *Haymond* and construed by this Court's precedent. To be sure, a term of supervised release, as this Court recently acknowledged, is a separate component of the overall sentencing package that is distinct from the imprisonment component: "supervised release is not imprisonment." *United States v. Flores*, No. 23-50128, — F.4th —, 2025 WL 682273, at *3 (5th Cir. Mar. 4, 2025). And that is why attaching a term of supervised release, even to a prison term imposed at the top of the available range, does not exceed the statutory maximum *prison* sentence.[2] *Id.* at *3-*4; *accord United States v. Butler*, 895 F.2d 1016, 1017-18 (5th Cir. 1989) ("The addition of a period of supervised release to a maximum jail sentence does not extend a party's imprisonment; therefore, it cannot create a violation of the maximum prison sentence allowed by statute.").

But while "supervised release is not imprisonment," *Flores*, 2025 WL 682273, at *3, a term of *re*imprisonment that later arises from revocation of it most certainly

---

[2] Indeed, this distinction prompted the *Flores* panel to note, correctly, that it "need not decide whether the district court could impose an additional term of imprisonment were Flores to again violate the terms of supervised release [sic]," in the future, after serving the maximum available prison term. *Flores*, 2025 WL 682273, at *3. Mr. Baldemoro uses "[sic]" to denote that, while quoting the *Flores* opinion as it stands, the defendant in fact initially received, violated, and had revoked a term of "five years of *probation*," *id.* at *1 (emphasis added), not, as the sentence quoted earlier suggests, supervised release. This conflation also recurs in the portion of the opinion addressed to the defendant's misplaced reliance on *Haymond*. *See, e.g.*, *id.* at *4 ("The issue is whether including a one-year term of supervised release to follow Flores's two-year term of imprisonment, imposed after he violated the conditions of his original supervised release [sic; probation], is permissible under the" federal statute at issue).

15

is *imprisonment*. And as *Johnson* "clearly explained" and *Haymond* "reaffirmed," *Lipscomb*, 66 F.4th at 611, 612, that term of reimprisonment "relate[s] to" and is "part of the penalty for the initial offense," *id.* at 612 (quoting *Haymond*, 588 U.S. at 658 (Breyer, J., concurring in judgment), and in turn *Johnson*, 529 U.S. at 700), such that "what the court is really doing" under Section 3583(e)(3) "is adjusting the defendant's sentence for his original crime." *Ibid.* (quoting *Haymond*, 588 U.S. at 648 n.5 (plurality)).

The second harmonizing option—reading Section 3583(e)(3) to have the effect of enhancing the range prescribed in Section 2252A(b)(2) (and those of all other substantive penalty provisions in the federal code)—is not foreclosed. But nor is it a permissible construction of the statute's text.

To start, it is not plausible to read 3583(e)(3) as meant to operate like the provisions at issue in *Apprendi* and progeny, which each had the effect of increasing the default punishment range for the underlying crime of conviction, thereby effectively creating a new, aggravated version of the offense. As the *Haymond* plurality noted, the primary teaching of *Apprendi* is "that ' "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties." ' " *Haymond*, 588 U.S. at 644 (quoting *Apprendi*, 530 U.S. at 490). But nothing in Section 3583(e)(3)'s text purports to increase the prescribed range of penalties for the underlying crime that resulted in supervised release. Unlike a sentence-

enhancement provision, and even unlike the portion of Section 3583(k) that man-dated a new elevated sentencing range, Section 3583(e)(3), as construed in *Johnson* and *Haymond*, modestly purports to permit an adjustment to the initial prison term of at most five years (two years in Mr. Baldemoro's case), and as little as "zero" years. *Haymond*, 588 U.S. at 639 (plurality); *see also id.* at 638 (noting that, under Section 3583(e)(3), a judge who finds a violation "normally may (but is not required to) impose" reimprisonment). Nowhere does the statute imply that the prospect of this adjustment is meant to alter the "range of penalties" prescribed for the initial offense, as in *Apprendi*, 530 U.S. at 490, or create a new mandatory minimum, as with the invalidated portion of Section 3583(k). *See Haymond*, 588 U.S. at 646.

Indeed, as both the *Haymond* plurality and controlling concurrence acknowl-edged, in the vast majority—and core—applications of Section 3583(e)(3), the stat-ute does not result in the defendant serving more time than permitted by the statute of conviction.[3] Rather, in almost all cases, the statute results in the defendant serving more prison time *within* the punishment range attached to his original offense. It would be passing strange to characterize a provision that almost never carries the

---

[3] *See Haymond*, 588 U.S. at 655 (plurality) ("In most cases (including this one), combining a defendant's initial and post-revocation sentences issued under § 3583(e) will not yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction."); *id.* at 658 (Breyer, J., concurring in the judgment) (noting that "the consequences for violation of conditions of supervised release under § 3583(e), which governs most revocations, are limited by the severity of the original crime of conviction").

potential to surpass the maximum available term prescribed for the underlying of-

fense as akin to the provisions at issue in *Apprendi* and progeny, which alter the

available range of imprisonment in *every* application.

Moreover, by its express terms, Section 3583(e)(3) keys the amount of reim-

prisonment available upon revocation to the class of felony assigned to the underly-

ing offense, and thus, the maximum prison term prescribed by the substantive statue

of conviction. *See* 18 U.S.C. § 3583(e)(3) (providing that "a defendant whose term

is revoked under this paragraph may not be required to serve on any such revocation

more than 5 years in prison if the offense that resulted in the term of supervised

release is a class A felony, more than 3 years in prison if such offense is a class B

felony, more than 2 years in prison if such offense is a class C or D felony, or more

than one year in any other case"); 18 U.S.C. § 3559(a)(1)–(9) (setting felony (and

misdemeanor) classifications according to "the maximum term of imprisonment au-

thorized" for the "offense"). It would make little sense for Congress to set the avail-

able revocation sanction under Section 3583(e)(3) according to the maximum prison

sentence for the "offense that resulted in the term of supervised release," as it did, if

it also understood that very sanction to increase the maximum prison sentence for

that offense. The implausibility of such a reading is all the more apparent given the

fact that, in the statute setting the various incorporated felony classifications, Con-

gress made clear that "the maximum term of imprisonment" for purposes of each

class "is the term authorized by *the law describing the offense*." 18 U.S.C. § 3559(b) (emphasis added).

Reading Section 3583(e)(3) as a provision that raises the maximum available prison term beyond that provided in the substantive-offense statute (though only in the rare instance in which the releasee has already served the maximum term) would also raise serious constitutional concerns this Court should be keen to avoid. For one, as noted, the construction walks right into the *Apprendi*-related Fifth and Sixth Amendment concerns that will be discussed in greater detail below.

Moreover, when a defendant pleads guilty, he is admonished as to the maximum term of supervised release, and that poor conduct could result in some amount of reimprisonment; but he is not advised that the amount of such reimprisonment might exceed the maximum authorized by the statute setting out the offense to which he is admitting his guilt. Indeed, the district court's colloquy with Mr. Baldemoro at his original rearraignment exemplifies the typical exchange:

> **The Court**: I am going to go over with you now the *maximum possible statutory penalties* you are facing as a result of your plea of guilty this morning.
>
> You are pleading guilty to Count 4 of the indictment[, . . .] [w]hich charges you with possession of child pornography, a violation of 18, United States Code, Section 2252(A)(a)(5)(B) and (b)(2). The *penalty* for *that crime* is a term of *imprisonment up to 10 years* and a fine of up to $250,000. There would be also supervised release of at least five years up to any term of years or life.

19

Along with that supervised release there would be certain conditions of supervised release you would be obliged to follow. If you failed to follow those, you could be put back into prison for *some* additional period of time without any credit for the time you had been on supervised release, without any credit for the time you had been in prison, and there would be a $100 special assessment for the one count of conviction.

Do you understand that all of those taken together, *the prison time*, the fine, the supervised release, the conditions of supervised release and the special assessment, those *are the maximum possible penalties* you are facing as a result of your plea of guilty this morning?

**Mr. Baldemoro**: I understand, Your Honor.

ROA.206-08 (emphasis added).

If Section 3583(e)(3) in fact authorizes reimprisonment for a total term that stretches beyond the maximum identified by the statute of conviction, then federal defendants, like Mr. Baldemoro, are pleading guilty without properly being specifically advised that they may ultimately be punished by, for example, *more* than 10 years in prison for violating Section 2252A(b)(2). This would raise serious concerns as to the voluntary and intelligent nature of the waiver of the right to trial, and such concerns provide yet more reason to avoid reading Section 3583(e)(3) as enhancing the statutory limit on imprisonment for the underlying offense. And there is no doubt that the maximum described by the substantive statute of conviction is often material to a defendant's decision to waive his trial rights and instead plead guilty. Again, this case provides an apt illustration. As Mr. Baldemoro's probation officer accurately

observed in the section describing the "Impact of [his] Plea Agreement" in the presentence report: "Had [Mr. Baldemoro] been convicted on all counts of the Indictment, the guideline imprisonment range would not have been limited by Count 4's statutory maximum term of 120 months." ROA.329. Indeed, avoiding exposure to the minimum and higher maximum ranges applicable to the first three counts was the primary benefit to Mr. Baldemoro's plea bargain.

These concerns are even more stark in the context of certain drug and child pornography offenses, for which the maximum term of supervised release is life. *See United States v. Jackson*, 559 F.3d 368, 369, 372 (5th Cir. 2009) (confirming that life is an authorized term of supervised release in drug-trafficking cases); 18 U.S.C. § 3583(k) (prescribing a supervised-release term of "not less than 5 [years], or life," for certain federal sex crimes, including Section 2252A). In such cases, Section 3583(e)(3) and (h) operate so as to allow the sentencing court to attach a new term of supervised release of any length to any prison term imposed upon revocation.[4]

---

[4] Subsection (h) purports to limit the amount of additional supervised release that can be ordered after any particular violation: the new term of supervised release cannot "exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). "The provision has no impact, however, when the maximum possible term of supervised release is life. Currently, this is true for convictions under the federal drug-trafficking laws, terrorism offenses, and many sex offenses. In such cases, there is no cap on a potential lifetime cycle of reimprisonment for supervised release violations." Fiona Doherty, *Indeterminate Sentencing Returns: The Invention of Supervised Release*, 88 N.Y.U. L. Rev. 958, 1011 (2013) (citing U.S. Sentencing Comm'n, *Federal Offenders Sentenced to Supervised Release* 6 n.22, 45 (2010)).

So, although the maximum term of imprisonment that may be imposed for each revocation is limited to, say, two years (for a class C felony), a term of that length may continue to be imposed, in perpetuity, upon any future revocation of each subsequent additional term of supervised release added pursuant to subsection (h). *See* Doherty, supra note 4, at 1011. To read 3583(e)(3) as increasing the maximum prison term authorized for the underlying offense in such cases, therefore, would be to interpret those offenses to effectively have no maximum term of imprisonment.

This reading, in turn, would further engender serious vagueness concerns. Mr. Baldemoro's Section 2252A(a)(5) violation, for instance, would be sanctionable not merely by at most 10 years, as Section 2252A(b)(2) plainly warns, but by perpetual repeating prison terms beyond 10 years, based on conduct that, at the time of the offense, he had not yet committed, and is violative of conditions that had yet to be attached to a term of supervised release that had yet to be imposed. The prospect of an ever expanding maximum prison term, on account of future conduct with no re-lation to the conduct flagged as comprising the elements of the underlying offense, is not a price ordinary citizens of average intelligence would understand Section 3583(e)(3) to require a defendant to pay for a crime that, according to the statute defining it, is punishable by "not more than 10 years."

There is, of course, a third potential interpretation that would eliminate the conflict that arises in cases like this one: Section 3583(e)(3) could simply be read as

22

authorizing an adjustment to the initially imposed prison term within the range pre-
scribed by the statute of conviction—here, Section 2252A(b)(2). Under this reading,
Section 3583(e)(3) would permit the reimprisonment of a released defendant for any
term within the applicable period for his class of offense—e.g., "not . . . more than
2 years" for a class C felony—but only to the extent that such term would not push
the total custodial term beyond the underlying statutory maximum.

     This interpretation would more closely align Section 3583(e)(3)'s effect with
the evident purpose of federal supervised release to function similarly to the parole
system it replaced—a device that permitted revocation and reimprisonment up to the
remaining unserved portion of the original sentence, which, in turn, was itself nec-
essarily constrained by the maximum prison term identified in the statute of convic-
tion.[5] And it at least a plausible understanding of the statute's text. The statement
that "a defendant whose term [of supervised release] is revoked . . . *may not* be re-
quired to serve on any such revocation *more than* 5 years in prison," in the case of a
class A felony, for example, does not, by its plain terms, preclude any prison term
that is less than five years—to include zero years. 18 U.S.C. § 3583(e)(3) (emphasis

---

[5] *See Haymond*, 588 U.S. at 651 (plurality) (observing that, under the federal parole system,
"a judge generally could sentence the defendant to serve *only* the remaining prison term authorized
by statute for his original crime of conviction" (original emphasis)); *Johnson*, 529 U.S. at 710-11
("Two sorts of nondetentive monitoring existed before the introduction of supervised release: pro-
bation and parole. Of these pre-Guidelines options, the one more closely analogous to supervised
release following imprisonment was parole, which by definition was a release under supervision
of a parole officer following service of some term of incarceration.").

added); *see Haymond*, 588 U.S. at 638-39 (plurality) (explaining that, had Section 3583(e)(3) applied, the district court "would have been free to sentence Mr. Haymond to between zero and two additional years in prison").

The Court need not delve too deep into the interpretive minutiae, however, because the effect of adopting the third harmonizing construction would be the same as applying the well-established principle that a conflict between specific and general statutory provisions should be resolved in favor of the specific provision. As noted above, that canon readily solves the clash between Section 2252A(b)(2) and Section 3583(e)(3).

In sum, where a defendant has already served the maximum available prison sentence for his offense of conviction, like Mr. Baldemoro, the effect of revocation and reimprisonment under Section 3583(e)(3) is to impose more punishment than allowed for the initial offense conduct. Unlike true enhancement provisions that trigger greater punishment ranges for different conduct not necessary to commit the offense of conviction, Section 3583(e)(3) has been authoritatively construed as permitting the adjustment of the defendant's sentence as an additional sanction *for the original offense conduct*. In the rare circumstances in which that sanction produces a total prison sentence above the maximum term prescribed by the statute of conviction, Section 3583(e)(3) accordingly results in the original offense being punished by more prison time than the law authorized for that crime. In a case like this one,

24

then, the statute does not increase the punishment ceiling (or floor) for the offense of conviction; it punishes that offense by more than the existing ceiling. Because the application of Section 3583(e)(3) to Mr. Baldemoro resulted in a sentence that unlawfully exceeded the statutory maximum, the judgment of revocation and sentence should be vacated.

**C.     Alternatively, Section 3583(e)(3)'s application to Mr. Baldemoro violated the Fifth and Sixth Amendments, either by effectively crossing over into punishment for his new violation conduct, or by enhancing the statutorily prescribed maximum prison term for his initial offense on the basis of judicial factfinding.**

Alternatively, Mr. Baldemoro contends that the same remedy is warranted because, as applied to revoke his supervised release and swell the total custodial sanction for this initial offense to more than 10 years, Section 3583(e)(3) is unconstitutional for either of two reasons.

The first applies irrespective of whether the Court agrees that, to the extent Section 3583(e)(3) authorized a total sentence above 10 years for Mr. Baldemoro's offense, the statute is best read as contradicting, or instead enhancing, the maximum sentence authorized by Section 2252A(b)(2). In either case, under *Johnson* and *Haymond*, the revocation sanctions provided in Section 3583 are ordinarily construed as punishment for the defendant's original offense conduct; but not always. Together, the *Haymond* plurality and Justice Breyer concluded that the invalidated portion of Section 3583(k) was properly understood as punishment for *new* violation conduct

that, if found true, triggered mandatory revocation and reimprisonment for at least five years. That is, under Justice Breyer's controlling opinion, it is clear that sanctioning the revocation of supervised release with reimprisonment, "without granting a defendant the [Fifth and Sixth Amendment] rights, including the jury trial right, that attend a new criminal prosecution," is impermissible to the extent it is "more like punishment for a new offense," as opposed to a further sanction for the initial offense. *Haymond*, 588 U.S. at 658-59 (Breyer, J., concurring in the judgment).

Mr. Baldemoro contends that where, as here, a revocation sentence imposed under Section 3583(e)(3) brings the total prison term beyond the maximum term authorized for the offense of conviction, the portion of the revocation sentence that exceeds the maximum is also properly conceived of as tantamount to punishment for the violation conduct, not the original offense. In that scenario, the justifications cited in *Morrissey v. Brewer*, 408 U.S. 471, 480-82 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973), as justifying less procedural protections than the Fifth and Sixth Amendments ordinarily require, in the context of the revocation of parole and probation, fall away. As to parole and probation, less process was due because the relevant statutes only authorized courts to retract the grace they had given by either reincarcerating a defendant for up to the remaining unserved portion of the sentence (parole), or for up to the maximum allowed for the offense resulting in the probated sentence (probation). *See Haymond*, 588 U.S. at 651 (plurality). The district

court could not have been doing that here, however, where the original prison term Mr. Baldemoro received *was* the maximum.

Thus, in the small subset of applications against a defendant sentenced at or near the maximum, Section 3583(e)(3) impermissibly reaches beyond constitutional limits by effectively permitting the punishment of the new (and here, noncriminal) conduct in the absence of the Fifth and Sixth Amendment safeguards of grand-jury presentment and indictment, right to trial by jury, confrontation, and proof beyond reasonable doubt. It was, therefore, error to detain Mr. Baldemoro and subject him to punishment for new conduct, "without granting [him] the rights, including the jury right, that attend a new criminal prosecution." *Haymond*, 588 U.S. at 659 (Breyer, J., concurring in the judgment).

Alternatively, if Section 3583(e)(3) could be plausibly construed as increasing the maximum available prison term prescribed by Section 2252A(b)(2)—i.e., as enhancing the penalty range prescribed for the original offense—then the Fifth and Sixth Amendments required the enhancement-triggering facts to be found beyond reasonable doubt by a jury, or admitted by a defendant properly advised of that right. This claim was not presented in *Haymond*, and neither the plurality, nor Justice Breyer's controlling concurrence, purported to authoritatively pass on it. Indeed, the plurality expressly left open the possibility that the scenario presented here—where "combining a defendant's initial and post-revocation sentences" would "yield a term

of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction"—could be the rare instance in which Section 3583(e)(3) might "turn[] out to raise Sixth Amendment issues in a small set of cases" under the plurality's reasoning.[6] *Haymond*, 588 U.S. at 655.

This case presents that question. Should the Court's analysis reach this point, Mr. Baldemoro contends that relying on judge-found facts to stretch his prison term beyond the maximum term authorized by his statute of conviction is the rare (and possibly only) instance in which Section 3583(e)(3) runs afoul of the Fifth and Sixth Amendments under the rule of *Apprendi*.

## D.    The government cannot establish that any error is harmless.

Whether the error is conceived of as punishing the original offense conduct in excess of the statutory maximum, impermissibly punishing the violation conduct in the absence of Fifth and Sixth Amendment protections, or allowing judicially found facts to raise the available imprisonment range, the government cannot lift its burden to establish harmlessness beyond a reasonable doubt.

First, a sentence in excess of the statutory maximum is illegal, and thus, never harmless, because the same result necessarily cannot obtain on remand. In any event,

---

[6] Notably, at oral argument, Justice Breyer seemed to regard the rare circumstance presented here—a revocation sentence that stretches the total sentence beyond the range prescribed for the original offense—as one that, though not implicated in Mr. Haymond's case, would plainly implicate the rule of *Apprendi* in a way that Section 3583(e)(3)'s ordinary, core application does not. *See* Tr. of Oral Argument, at 13-14, 15-16, 38-40, *United States v. Haymond*, No. 17-1672.

the district court made clear that "if [the case] goes up and the Fifth Circuit tells me I'm wrong [in overruling Mr. Baldemoro's objections], I'll fix it." ROA.279. Accordingly, if the Court agrees that Section 3583(e)(3)'s application to Mr. Baldemoro had that unlawful effect, the inquiry is at an end and the revocation judgment should be vacated.

If instead the error is best characterized as punishing the new violation conduct, or enhancing the maximum available penalty on the basis of judicial factfinding, that error would not be harmless beyond a reasonable doubt because its correction would necessarily produce a different outcome. Indeed, federal law provides no procedures for holding revocation proceedings that properly observe all the missing constitutional safeguards.

There is no procedure, for instance, for presenting alleged violations of supervised release to a grand jury for indictment—particularly where, as here, the alleged violations are technical and arise from conduct that is not criminal and thus could not itself sustain a valid indictment under existing rules. *See* Fed. R. Crim. P. 7(a)(1)(B), (c)(1) (indictment necessary for any "offense" punishable by more than one year, and must state "the essential facts constituting the offense charged"). Nor does federal law provide a mechanism for alleged supervised-release violations (whether premised on criminal conduct, or not) to be tried to a jury, or admitted by a defendant deemed to have voluntarily and intelligently waived his right to trial

after a sufficient colloquy with the presiding court. Indeed, the text of the supervised release statute is clear that courts, and courts alone, determine whether to, among other things, revoke supervised release and sanction a defendant for failure to comply with its terms. *E.g.*, 18 U.S.C. § 3583(e) ("The court may … terminate a term of supervised release … extend a term of supervised release … [or] revoke a term of supervised release.…"). "[T]he words 'the court' mean 'the judge without the jury,' not 'the judge working together with the jury.'" *United States v. Booker*, 543 U.S. 220, 249 (2005).

Moreover, in recognizing that *Apprendi* error is not structural, and thus subject to constitutional harm analysis, in *Washington v. Recuenco*, 548 U.S. 212, 218-22 (2006), the Supreme Court noted that, "If respondent is correct that Washington law does not provide for a procedure by which his jury could have made a finding pertaining to his possession of a firearm, that merely suggests that respondent will be able to demonstrate that the [constitutional] violation in this particular case was not harmless." *Id.* at 218. That is the case in the context of a revocation sentence that brings the total sentence beyond the maximum authorized for the underlying offense. There is no procedure (and, indeed, none could exist) that would allow for a defendant to either admit the facts necessary to authorize a sentence of greater than 10 years (i.e., the violation conduct) at the time of his guilty plea, or to have the jury tasked with assessing his guilt find those facts at trial. Nor, as just noted, is there any federal

rule or statute that that provides a mechanism to conduct a jury trial over an alleged violation of supervised release. To the contrary, Federal Rule of Procedure 32.1 and Section 3583 together explicitly provide only for revocation procedures that do not include the right to a trial by jury.

Accordingly, even assuming that the as-applied violation is properly conceived of as an *Apprendi*-type error, that error is not harmless because "[federal] law does not provide for a procedure by which [a] jury could have made a finding pertaining to" the alleged violation conduct, *Recuenco*, 548 at 218, and Mr. Baldemoro could not have admitted that conduct at the time he pleaded guilty.

## CONCLUSION

The Court should vacate the judgment of revocation and sentence and remand

for further consistent proceedings.

Respectfully submitted,

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

s/ *Evan G. Howze*
EVAN G. HOWZE
Assistant Federal Public Defender
Attorney for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002
(713) 718-4600

## CERTIFICATE OF SERVICE

This brief was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF system.

s/ *Evan G. Howze*

EVAN G. HOWZE

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) & (f) because it contains 7,279 words.

2. This brief complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared with the current version of Microsoft Word software, Microsoft Office 365 edition, using the proportionally spaced, Times New Roman typeface in both the text (14-point) and footnotes (12-point).

3. This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4. This brief complies with the privacy-redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

5. This brief complies with the electronic-submission requirement of 5th Cir. R. 25.2.1 because it is an exact copy of the paper document.

6. This brief has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.

s/ *Evan G. Howze*

EVAN G. HOWZE